UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CESAR PERALTA | CIVIL ACTION |
| VERSUS | NO. 18-3738 |
| RACK ROOM SHOES, INC. | SECTION: M (2) |

### ORDER & REASONS

Before the Court is a Motion to Stay filed by defendant Rack Room Shoes, Inc. ("RRS"),[1] to which plaintiff Cesar Peralta ("Peralta") responds in opposition,[2] and in support of which RRS replies,[3] and to which both Peralta and RRS filed notices of supplemental authority.[4] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

### I. BACKGROUND

This case is a putative class action alleging claims arising under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Peralta filed this action in the Civil District Court, Parish of Orleans, State of Louisiana, against RRS alleging that, on November 22, 2017, RRS sent an unauthorized text message advertisement to Peralta's cellular telephone using an automated telephone dialing system ("ATDS") in violation of the TCPA.[5] Peralta also alleges that RRS's actions violated the Louisiana Unfair Trade Practices Act, ("LUTPA"), La. R.S. 51:1401, *et seq.*[6] Peralta asserts his claims on behalf of himself and all similarly situated consumers who have received RRS's text message advertisements.[7] RRS removed the action to the United States

---

[1] R. Doc. 17.
[2] R. Doc. 22.
[3] R. Doc. 23.
[4] R. Docs. 27 & 28.
[5] R. Doc. 1-2 at 1-2.
[6] *Id.* at 2-3.
[7] *Id.* at 2.

District Court for the Eastern District of Louisiana alleging federal question and diversity subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, respectively.[8]

## II. PENDING MOTION

### A. Statutory, Regulatory, and Jurisprudential Backdrop

RRS filed a motion to stay this matter pending guidance from the Federal Communication Commission ("FCC") on the definition of ATDS.[9] Thus, RRS's motion to stay is predicated on the evolving history of the FCC's definition of ATDS. In *Gorgan v. Aaron's Inc.*, 2018 WL 6040195 (N.D. Ga. Oct. 26, 2018), the court considered the exact same question raised by RRS herein – whether to stay a putative class action brought under the TCPA pending guidance from the FCC regarding the definition of ATDS – and explained the statutory, regulatory, and jurisprudential landscape as follows:

#### 1. The TCPA

> Automated telephone calls, colloquially referred to as "robocalls," have ravaged both the landlines and mobile telephone lines of millions of American households throughout the years. *See generally* 47 U.S.C. § 227, Note, Pub. L. No. 102-243, § 2(1-4), 105 Stat. 2394, 2394. In response to rising consumer discontent with the seemingly endless proliferation of automated telephone calls, Congress, in 1991, enacted the TCPA with the primary aim of restricting automated telephone calls to both residential telephone lines as well as to telephone numbers assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii), (B); *see also* 47 U.S.C. § 227, Note, Pub. L. No. 102-243, § 2(5-6), 105 Stat. 2394, 2394 (finding, in relevant part, that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety" and that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers").

> As is relevant to the instant case, the TCPA provides that

>> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –

---
[8] R. Doc. 1 at 1-3.
[9] R. Doc. 17.

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice –
>
> \* \* \*
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

47 U.S.C. § 227(b)(1)(A)(iii). The term "automatic telephone dialing system ['ATDS']" is likewise defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1).

Consonant with its remedial purpose, the TCPA provides for a private right of action which allows a party to seek both statutory damages in the amount of $500 per violation as well as injunctive relief against the offending conduct. *Id.* § 227(b)(3). Moreover, if a defendant is found to have "willfully or knowingly violated" the statute or the "regulations prescribed" by the FCC, the courts are vested with the inherent discretion to award treble damages. *Id.* § 227(b)(3)(C).

Given the broad sweep of the prohibitions set forth in the TCPA, Congress explicitly vested the Federal Communications Commission (the "FCC") with the sole authority to promulgate regulations implementing the TCPA's requirements. *Id.* § 227(b)(2) (mandating that the FCC "shall prescribe regulations to implement the requirements of this subsection....").

### 2. FCC's Regulatory Orders[1]

The FCC, in accordance with its statutory mandate has, over the intervening years, issued several regulations delineating the TCPA's reach and scope. The first of these was promulgated in 1992, shortly after the statute's enactment and, as is relevant here, predominantly adopted, without elaboration, the statutory definition of what constitutes an ATDS. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8792 App'x B (1992) (amending 47 C.F.R. § 64.1200).

In 2003, the FCC, based upon the ever-changing technological landscape, revisited the types of equipment which would constitute an ATDS as defined by the statute. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14091 (2003). Specifically, the FCC determined whether predictive dialers – "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls" – constitute an ATDS. *Id.* at 14091. After setting forth

how predictive dialers functioned and reviewing the legislative history and statutory definition of an ATDS, the FCC determined that "to exclude from these restrictions equipment that use predictive dialing software from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result ... [and] [t]herefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *Id.* at 14092-93.

In 2008, the FCC revisited whether a predictive dialer constitutes an ATDS. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (2008). Specifically, the FCC was asked to determine whether a predictive dialer meets the definition of an autodialer "only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." *Id.* After considering the issue and referencing its earlier 2003 decision on the matter, the FCC noted that the petitioner did not raise any "new information about predictive dialers that warrants reconsideration of these findings" and, on that basis, affirmed its earlier 2003 ruling in this regard. *Id.* at 566-67.

In 2015, the FCC reaffirmed its position as to whether predictive dialers fall within the ambit of the statutory definition of an ATDS. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7971-72 (2015). Specifically, the FCC explicitly endorsed the continuing vitality of its position that

> dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers. We also reiterate that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of "autodialer" for the same reason.

*Id.* The FCC also reiterated its earlier position that "autodialers need only have the 'capacity' to dial random and sequential numbers, rather than the 'present ability' to do so. Hence, any equipment that has the requisite 'capacity' is an autodialer and is therefore subject to the TCPA." *Id.* at 7974.

In its 2015 declaratory ruling, the FCC also addressed whether "a caller making a call subject to the TCPA to a [wireless] number reassigned from the consumer who gave consent for the call to a new consumer is liable for violating the TCPA." *Id.* at 7999. The FCC, in answering this question, clarified that "the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber (or non-subscriber customary user of the phone) and that caller best practices can facilitate detection of reassignments before calls." *Id.* at 7999-8000. However, the FCC nevertheless created a one-call "safe harbor" for those "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they

4

have valid consent to make the call[.]" *Id.* at 8000. In such cases, the FCC opined that such callers "should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.*

### 3. The Impact of *ACA International v. Federal Communications Commission*

Apparently unhappy with the FCC's 2015 ruling, a large group of regulated entities timely challenged various aspects of that ruling in both the Seventh and D.C. Circuits.[2] The petitions were ultimately consolidated in the D.C. Circuit by order of the Judicial Panel on Multidistrict Litigation. *See* Consolidation Order, *ACA Int'l v. FCC ("ACA")*, 885 F.3d 687 (D.C. Cir. 2018) (No. 15-1211).[3] In *ACA*, the court addressed four challenges to the FCC's 2015 ruling:

> (i) which sorts of automated dialing equipment are subject to the TCPA's restrictions on unconsented calls; (ii) when a caller obtains a party's consent, does a call nonetheless violate the Act if, unbeknownst to the caller, the consenting party's wireless number has been reassigned to a different person who has not given consent; (iii) how may a consenting party revoke her consent; and (iv) did the Commission too narrowly fashion an exemption from the TCPA's consent requirement for certain healthcare-related calls.

*ACA Int'l*, 885 F.3d at 691-92.[4]

In addressing the first issue, the *ACA* court observed that "the Commission adopted an expansive interpretation of 'capacity' having the apparent effect of embracing any and all smartphones: the device routinely used by the vast majority of citizens to make calls and send messages (and for many people, the sole phone equipment they own)" and that "[i]t is undisputed that essentially any smartphone, with the addition of software, can gain the statutorily enumerated features of an autodialer and thus function as an ATDS." *ACA Int'l*, 885 F.3d at 696. However, such a broad sweeping definition, in the court's view, was untenable since "if every smartphone qualifies as an ATDS, the statute's restrictions on autodialer calls assume an eye-popping sweep" since even "an uninvited call or message from a smartphone violates the statute even if autodialer features were not used to make the call or send the message." *Id.* at 697. Thus, the court determined that the "Commission's interpretation of the term 'capacity' in the statutory definition of an ATDS is 'utterly unreasonable in the breadth of its regulatory [in]clusion." *Id.* at 700 (internal citation omitted) (alteration in original).

After finding the FCC's definition of "capacity" to be "unreasonable," the *ACA* court turned to the "inadequacies in the agency's explanation of the requisite features [of an ATDS]." *Id.* at 701. Specifically, while acknowledging that the FCC, in its 2015 ruling as well as in previous orders, sought to address the

"substantial questions" associated with the statutory phrase "using a random or sequential number generator," ultimately the court determined that "[t]he Commission's most recent effort falls short of reasoned decisionmaking" since it offers "no meaningful guidance to affected parties in material respects on whether their equipment is subject to the statute's autodialer restrictions." *Id.*

Thus, based upon the lack of clarity in the FCC's 2015 ruling concerning the types of equipment that qualify as an ATDS, the *ACA* Court "set aside [ ] the Commission's effort to clarify the types of call equipment that fall within the TCPA's restrictions."

As concerned the second issue, reassigned number liability, the *ACA* court

> vacate[d] the agency's approach to calls made to a phone number previously assigned to a person who had given consent but since reassigned to another (nonconsenting) person. The Commission concluded that calls in that situation violate the TCPA, apart from a one-call safe harbor, regardless of whether the caller has any awareness of the reassignment. We determine that the agency's one-call safe harbor, at least as defended in the order, is arbitrary and capricious.

*Id.* at 692. Specifically, the court recognized that the FCC "gave no explanation of why reasonable-reliance considerations would support limiting the safe harbor to just one call or message" and that this "failure ... require[d] setting aside not only its allowance of a one-call safe harbor, but also its treatment of reassigned numbers more generally." *Id.* at 707-08.

### 4. Post *ACA International Landscape*

In the wake of the D.C. Circuit's decision in *ACA*, district courts have grappled with the extent to which the FCC's pre-2015 pronouncements concerning what equipment constitutes an ATDS remains viable. *See DIANA FLEMING, Plaintiff, v. ASSOCIATED CREDIT SERVICES, INC., Defendant.*, No. CV163382, 2018 WL 4562460, at *7 (D.N.J. Sept. 21, 2018) (recognizing that "District courts, so far, have not been consistent as to whether *ACC* [sic] *International*, in rolling back the 2015 FCC Declaratory Ruling, left the 2003 and 2008 FCC Orders intact – *i.e.*, whether predictive dialers remain impermissible under the statute.") (citing cases). Indeed, while a number of district courts have determined that only the 2015 ruling was set aside, thereby leaving intact the sweeping definition of an ATDS (which includes predictive dialers) as set forth in the 2003 and 2008 orders, *see id.* (citing cases), others have found that the D.C. Circuit's ruling, while explicitly only setting aside the FCC's 2015 order, "necessarily set aside the part of the previous 2003 and 2008 FCC Orders that ruled that a predictive dialer was impermissible under the TCPA." *Id.* at 7-8. In addition, at least one court of appeals has explicitly concluded that in the wake of the *ACA* decision, the 2003 and 2008 orders are no longer viable with respect to the definition of an ATDS. *See Marks v. Crunch San Diego, LLC*, ---F.3d--- (9th Cir. 2018), 2018 WL 4495553, at *6 (9th Cir. Sep. 20,

2018) ("Because the D.C. Circuit exercised its authority to set aside the FCC's interpretation of the definition of an ATDS in the 2015 order ... and any prior FCC rules that were reinstated by the 2015 order, we conclude that the FCC's prior orders on that issue are no longer binding on us."). Moreover, at least two other courts of appeal have implicitly disavowed the continuing viability of the 2003 and 2008 orders as concerns the definition of an ATDS. *See King v. Time Warner Cable Inc.*, 894 F.3d 473, 477 (2d Cir. 2018) (recognizing that because the *ACA* decision "invalidated th[e] [FCC's 2015] Order and thereby removed any deference we might owe to the views the FCC expressed in it, we must decide independently whether the district court's broad understanding of the 'capacity' a device must have in order to qualify as an ATDS under the TCPA is a supportable interpretation of the statute."); *Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018) ("In light of the D.C. Circuit's holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of 2015 Declaratory Ruling.").

Notwithstanding the divergent views among district courts as to the continuing vitality of the FCC's 2003 and 2008 orders concerning the definition of an ATDS, one common thread seems to remain – that cases involving claims implicating the definition of an ATDS have nevertheless continued to press forward. Indeed, in tackling these cases, courts appear to either interpret an ATDS according to (1) the definition as espoused in the 2003 and 2008 FCC orders; or (2) the statutory language itself. *Compare Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578 (M.D. Tenn. 2018) ("In the wake of *ACA International*, this Court joins the growing number of other courts that continue to rely on the interpretation of § 227(a)(1) set forth in prior FCC rulings."); *Maddox v. CBE Grp., Inc.*, No. 1:17-CV-1909-SCJ, 2018 WL 2327037, at *4 (N.D. Ga. May 22, 2018) ("Given the *ACA Int'l* decision, the Court relies on the FCC's 2003 interpretation of § 227(a)(1) to determine if Defendant's system qualifies as an ATDS."); *Reyes v. BCA Fin. Servs., Inc.*, 312 F. Supp. 3d 1308, 1320 (S.D. Fla. 2018) (noting that although "the *ACA International* case has given the Court considerable pause ... the Court finds that the prior FCC Orders are still binding. Therefore, the *ACA International* case does not change the Court's conclusion on the ATDS issue.") *with Sessions v. Barclays Bank Delaware*, 317 F. Supp. 3d 1208, 1212 (N.D. Ga. 2018) (concluding that the "D.C. Circuit clearly held that it invalidated *all* of the FCC's pronouncements as to the definition of 'capacity' as well as its descriptions of the statutory functions necessary to be an ATDS."); *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 935 (N.D. Ill. 2018) (finding that the D.C. Circuit's decision in *ACA* "necessarily invalidated the 2003 Order and 2008 Declaratory Ruling insofar as they provide, as did the 2015 Declaratory Ruling, that a predictive dialer qualifies as an ATDS even if it does not have the capacity to generate phone numbers randomly or sequentially and then to dial them."); *FLEMING*, 2018 WL 4562460, at *8 (recognizing the "disparate views in the case law" but concluding that "when the D.C. Circuit vacated the 2015 FCC Declaratory Ruling it also necessarily set aside the parts of the previous 2003 and 2008 Orders that ruled that a predictive dialer was impermissible under the TCPA"); *Gonzalez v. Ocwen Loan Servicing, LLC*, No. 5:18-cv-340-Oc-30, 2018 WL 4217065, at *6 (M.D. Fl. Sep. 5, 2018) (same and finding that because "the

question as to what devices are ATDSs is still unresolved ... this Court must answer that question by returning to the statutory definition of an ATDS found in [the TCPA]"); *KEVIN A. GARY, Plaintiff, v. TRUEBLUE, INC., ET AL., Defendants. Additional Party Names: Labor Ready, Inc., People Ready, Inc.*, No. 17-CV-10544, 2018 WL 4931980, at *3 (E.D. Mich. Oct. 11, 2018) (determining that "because of the D.C. Circuit's holding in *ACA International*, this Court need not defer to the FCC's understanding of the capacity and functions of an autodialer under the TCPA" and instead "look[ing] to the plain language of the statute to resolve the pending motion.").

[1] The FCC's regulatory orders are discussed only to the limited extent that they implicate issues arising in the instant case.

[2] Pursuant to the Hobbs Act, "[t]he court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of — (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342(1).

[3] "Once the Multidistrict Litigation Panel assigned petitions challenging the [FCC final] Rule to the D.C. Circuit, that court became the sole forum for addressing ... the validity of the FCC's rule[ ]. And consequently, its decision ... became binding outside of the [D.C. Circuit]. This result makes sense in light of the procedural mechanism Congress has provided for challenging agency rules." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1, 2017), *cert. denied*, 138 S. Ct. 1284, 200 L. Ed. 2d 470 (2018) (citing 28 U.S.C. §§ 2112, 2342-43) (internal citations omitted) (second and third alterations in original); *see Maddox v. CBE Grp., Inc.*, No. 1:17-CV-1909, 2018 WL 2327037, at *4 (N.D. Ga. May 22, 2018) (recognizing that "[a]lthough the issue has not been directly addressed by the Eleventh Circuit, other circuits have held that a decision in a case consolidated under § 2112(a) is binding on courts across the country" and concluding, on that basis, that "[w]hile ACA Int'l was decided by the D.C. Circuit, the Court is persuaded that the decision is binding in this Circuit as well"); *Sessions v. Barclays Bank Delaware*, 276 F. Supp. 3d 1349, 1351 (N.D. Ga. 2017) ("The Hobbs Act expressly confers the federal courts of appeals exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of the FCC Ruling in this case. 28 U.S.C. § 2342. When agency regulations are challenged in more than one court of appeals, the panel on multidistrict litigation consolidates those petitions and assigns them to a single circuit. *See* 28 U.S.C. § 2112. And the decisions in those consolidated actions are binding outside of the circuit in which they occur, including on this Court.") (internal quotations omitted).

[4] This case involves only the first two issues. Thus, for the sake of brevity, the Court will summarize the ACA court's analysis only as to these two discrete issues.

*Gorgan*, 2018 WL 6040195, at *1-6.

## B. RSS's Motion to Stay

RSS brings its motion to stay against this statutory, regulatory, and jurisprudential backdrop, arguing that the FCC will soon rule on what constitutes an ATDS, and that the FCC's guidance will determine issues relevant in this case pertaining to the equipment RSS used to send text message advertisements. RRS argues that this guidance is critical to the resolution of this case

because it contends that it did not use an ATDS, as it is properly defined, to send the allegedly offending text messages.[10] RRS argues that a stay is appropriate under either the primary jurisdiction doctrine or this Court's inherent authority to manage its docket.[11]

Peralta opposes the motion to stay arguing that a stay is not warranted because the FCC's guidance will not change the applicable law, which the Court can apply without such guidance.[12] Peralta also argues that there is no guarantee that the FCC will issue its guidance in the near future; thus a stay could be indefinite.[13] Further, Peralta points out that most of the courts that have considered whether to stay similar cases in anticipation of the FCC's guidance have denied the motions to stay.[14]

## III. Law & Analysis

### A. Primary Jurisdiction

The primary jurisdiction doctrine is aimed at maintaining "'proper relationships between the courts and administrative agencies' by suspending judicial process pending the 'referral' of certain issues to an administrative agency for its views." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 809-10 (5th Cir. 2011) (quoting *United States v. W. Pac. R.R. Co.,* 352 U.S. 59, 63-64 (1956)). The doctrine is not related to the district court's subject-matter jurisdiction over an action, but rather it presumes original federal subject-matter jurisdiction. *Id.* (citing *S. New Eng. Tel. Co. v. Global NAPs Inc.,* 624 F.3d 123, 136 (2d Cir. 2010); *see also Reiter v. Cooper,* 507 U.S. 258, 268 (1993) ("Referral of the issue to the administrative agency does not deprive the court of jurisdiction...."); *see W. Pac.,* 352 U.S. at 63-64 (stating that doctrine of primary jurisdiction "applies where a claim is *originally* cognizable in the courts" (emphasis added)); *Ill. Bell Tel. Co., Inc. v. Global NAPs Ill., Inc.,* 551 F.3d 587, 595 (7th Cir. 2008) ("Despite the term primary

---

[10] R. Doc. 17-1 at 1-2.
[11] *Id.* at 4-10.
[12] R. Doc. 22 at 1-3.
[13] *Id.* at 3-5.
[14] *Id.* at 5-6.

jurisdiction, the reference of a case to an agency pursuant to that doctrine, rather than denying the jurisdiction of the court over the case, presupposes that jurisdiction.")).

Courts do not use a "fixed formula" in applying the primary jurisdiction doctrine. *Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 810 F.3d 299, 309-10 (5th Cir. 2016) (citing *Columbia Gas Transmission Corp. v. Allied Chem. Corp.*, 652 F.2d 503, 520 n.15 (5th Cir. 1981)). Rather, "[i]n every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.'" *Id.* (quoting *Columbia Gas*, 652 F.2d at 520 n.15). In *Columbia Gas*, the Fifth Circuit explained:

> It is well established that courts need not refer an issue to an agency when the issue is strictly a legal one, involving neither the agency's particular expertise nor its fact finding prowess; the standards to be applied in resolving the issue are within the conventional competence of the courts and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of the case. Furthermore, the
>
>> courts should be reluctant to invoke the doctrine of primary jurisdiction, which often, but not always, results in added expense and delay to the litigants where the nature of the action deems the application of the doctrine inappropriate .... Likewise, when the agency's position is sufficiently clear or nontechnical or when the issue is peripheral to the main litigation, courts should be very reluctant to refer .... Finally, the court must always balance the benefits of seeking the agency's aid with the need to resolve disputes fairly yet as expeditiously as possible.

652 F.2d at 520 n.15 (internal citations omitted; quoting *Mississippi Power & Light Co. v. United Gas Pipeline Co.,* 532 F.2d 412, 419 (5th Cir. 1976)).

In *Mississippi Power & Light,* the Fifth Circuit enumerated a few other circumstances where application of the primary jurisdiction doctrine "generally is not warranted, including (1) '[i]f, under no conceivable set of facts, the agency could immunize what would be a clear violation of federal law'; 'where the litigation deals with a single event which requires no continuing supervision by the regulatory agency'; or 'where Congress has determined by statute that the courts

should decide the issue in the first instance, primary jurisdiction should not be invoked.'" *Occidental Chem.*, 810 F.3d at 310 (quoting *Mississippi Power & Light*, 532 F.2d at 419). In sum, "at a general level, the primary jurisdiction doctrine requires the district court to balance the assistance potentially provided by an agency's specialized expertise against the litigants' certainty of delay." *Id.*

Since the District of Columbia Circuit's *ACA International* ruling, several district courts have considered whether to apply the primary jurisdiction doctrine to stay proceedings in anticipation of the FCC's guidance on the definition of ATDS, and nearly all of them (of which this Court is aware) have denied the motions to stay.[15] *See Gorgan*, 2018 WL 6040195, at *7-8; *Pieterson v. Wells Fargo Bank, N.A.*, 2018 WL 3241069, at *3-4 (N.D. Ca. July 2, 2018); *Baum v. ADT LLC*, 2018 WL 5255219, at *3-4 (W.D. Pa. Oct. 22, 2018). In *Gorgan*, the court explained that, although it is within the FCC's purview to issue guidance on the definition of ATDS, and such a guidance would aid the court and the litigants, the court is able to adjudicate the parties' dispute by applying the statute and other applicable existing law. 2018 WL 6040195, at *7-8. The court noted that it could take years for the FCC to issue such guidance, which would amount to an indefinite stay. *Id.* at *8. Thus, the court found that that a stay was not warranted. *Id.*; *see also Pieterson*, 2018 WL 3241069, at *3 ("[T]he primary jurisdiction doctrine does not comfortably fit the circumstances of this case because issues before the FCC are not ones of first impression and controlling or persuasive law already exists."); *Baum*, 2018 WL 5255219, at *4 (finding that a stay was not warranted under the primary jurisdiction doctrine because the court is competent to decide the issues).

For the same reasons explained in *Gorgan, Pieterson*, and *Baum*, this Court finds that a stay is not warranted in this case under the primary jurisdiction doctrine. Although an opinion

---

[15] In *Buhr v. ADT Inc.*, 18-cv-80605, R. Doc. 40 (S.D. Fla. July 25, 2018), the court, without discussion, issued a "paperless order" on the docket sheet granting defendant's motion to stay "for all of the reasons set forth in the Motion," which included arguments advocating a stay based on primary jurisdiction and inherent authority.

from the FCC on the definition of ADTS would certainly be beneficial, this Court is able to apply the existing law to resolve the issues presented. Further, there is no concrete indication as to the timing of the FCC's issuance of its opinion, and even after it is released, the opinion could be challenged. Thus, the length of the stay would be indefinite at this point. As such, this Court will not stay this action pursuant to the primary jurisdiction doctrine.

C. **Inherent Authority**

A district court has the power to stay proceedings to manage its docket "with economy of time and effort for itself, for counsel, and for litigants. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The party moving for a stay bears a "heavy burden" to demonstrate that it is appropriate. *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985). "Where a discretionary stay is proposed, something close to genuine necessity should be the mother of its invocation." *Id.*

In the wake of *ACA International*, several district courts have considered whether to stay similar proceedings pursuant to their inherent authority, and nearly all of them (of which this Court is aware) have declined to do so.[16] *See Pieterson*, 2018 WL 3241069, at *4-5; *Baum*, 2018 WL 5255219, at *4-6; *Gould v. Farmers Ins. Exchange*, 326F.R.D. 530, 531-32 (E.D. Mo. Aug. 6, 2018); *Sieleman v. Freedom Mortg. Corp.*, 2018 WL 3656159, at *3-4 (D.N.J. Aug 2, 2018); *Somogyi v. Freedom Mortg. Corp.*, 2018 WL 3656158, at *3-4 (D.N.J. Aug. 2, 2018); *Powell v. Youfit Health Clubs LLC*, 17-cv-62328, R. Doc. 51 (S.D. Fla. Sept. 25, 2018). Similarly, this Court declines to exercise its inherent authority to stay these proceedings pending the FCC's guidance for the same reasons that it finds that a stay is not warranted under the primary jurisdiction doctrine.

---

[16] *See supra* note 15.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that RRS's motion to stay is DENIED.

New Orleans, Louisiana, this 30th day of November 2018.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE